UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES | : |
| VS. | :     3:18-CR-17 (VAB) |
| ERNESTO LUIS DELGADO | :     APRIL 23, 2020 |

**DEFENDANT'S MOTION FOR RELEASE 18 U.S.C. SECTION 3582(c)(1)(A)(i)**

      The undersigned, counsel for the Defendant, Ernesto Luis Delgado, pursuant to the Fifth and Eighth Amendments to the United States Constitution and Title 18 U.S.C. section 3582(c)(1)(A)(i) hereby moves this Court as follows:

      A.) For compassionate release under the First Step Act, 18 U.S.C. section 3582(c)(1)(A) where Mr. Delgado's sentence would be reduced to time served, and he would be released and commence his term of supervised release.

      B.) Alternatively, if compassionate release is denied, for home confinement where Mr. Delgado would be released from Danbury Correctional and he would serve the remainder of his sentence in home confinement. The home confinement could be revoked if Mr. Delgado violated any of the terms imposed. When Mr. Delgado completes the term of home confinement, the previously imposed term of supervised release would begin. 18 U.S.C. section 3624(c)(2).

      C.) Alternatively, if both compassionate release and home confinement are denied, that Your Honor order/ recommend that Mr. Delgado be granted a furlough pursuant to 18 U.S.C. section 3622 and 28 U.S.C. section 994(a)(2) until the current public health crisis has ended.

**Background**

      Mr. Delgado was arrested on December 1, 2017. He was detained at the Wyatt Detention Center. On April 25, 2019, Your Honor imposed a 120 month prison sentence. Mr. Delgado

will have served 30 months of the 120 month sentence by next week. Mr. Delgado is currently in the Danbury Federal Correctional Institution.

### A. COMPASSIONATE RELEASE

The First Step Act allows prisoners to move for compassionate release from prison when "extraordinary and compelling reasons" warrant such release. 18 U.S.C. section 3582(c)(1)(A)(i). There are four prerequisites to a court's granting compassionate release under the First Step Act. First, the defendant must have exhausted his administrative rights with the BOP. § 3582(c)(1)(A). Second, the court must find that "extraordinary and compelling reasons warrant" release. Section 3582(c)(1)(A)(i). Third, the court must consider the factors set forth in § 3553(a). § 3582(c)(1)(A). Fourth, the court must find that release is consistent with the Sentencing Commission's policy statements. Section 3582(c)(1)(A)(i).

**1.) Exhaustion**

A prisoner has exhausted his administrative remedies if the Bureau of Prisons fails to bring a motion for compassionate relief within 30 days from the receipt, by the Warden of the defendant's facility, of such a request. § 3582(c)(1)(A).

Mr. Delgado informed the undersigned that he sent an email request for compassionate release to the Warden on April 10 and a letter on April 12, 2020. The undersigned followed-up on Mr. Delgado's letters with a letter request to the Warden, on Mr. Delgado's behalf that was mailed on April 20, 2020 return receipt requested. See Exhibit "A" attached.

Mr. Delgado respectfully requests that the Court waive the exhaustion requirement in light of the fact that he is incarcerated in Danbury FCI. Alternatively, Mr. Delgado will defer to the Court as to when he has satisfied the 30 day exhaustion requirement.

**2.) <u>Extraordinary and Compelling Reasons</u>**

It is our view that Mr. Delgado qualifies for compassionate release because his medical conditions in combination with the COVID 19 pandemic outbreak at the Danbury FCI, constitute an extraordinary and compelling reason for his release under 18 U.S.C. section 3582(c)(1)(A)(i).

The United States Centers for Disease Control and Prevention "CDC" has advised that individuals of any age that have serious underlying medical conditions might be at a higher risk for severe illness from COVID 19. The list of the "underlying medical conditions" includes:

1.) People with severe obesity (body mass index [BMI] of 40 or higher.

2.) People who are immunocompromised.

**<u>Obesity</u>**

It is our understanding that the Bureau of Prisons records show that Mr. Delgado is 6" 1" inches tall. Although he has not been weighed in months, Mr. Delgado believes that he weighs approximately 304 lbs.

Doctors at the NYU Langone Health center conducted the largest study so far of United States hospital admissions for COVID 19, focused on New York City. That study, from April 12, 2020 found that "**<u>obesity</u>** of patients was the single biggest factor, after age, in whether those with COVID 19 had to be admitted to a hospital." In this study, an obese person was an individual with a body mass index [BMI] of 30 and higher. (Emphasis added) See Exhibit "B" attached.

At 6'1" and weighing 305 lbs., Mr. Delgado would have a BMI of 40.2 based upon the CDC's adult BMI calculator. See Exhibit "C" attached

**<u>Immunocompromised</u>**

Mr. Delgado is currently being treated at Danbury for psoriasis.

3

According to the Mayo Clinic:

The cause of psoriasis isn't fully understood, but it's thought to be related to an immune system problem with T cells and other white blood cells.  T cells normally travel through the body to defend against foreign substances, such as **viruses** or bacteria.  (Emphasis added) See Exhibit "D" attached at page 5.

Mr. Delgado has a herniated disc at L4-L5, L5-S1 from a motor cycle accident years ago. He takes and has taken NSAID's like Ibuprofen for years for the pain.  See Exhibit "E" attached

According to a study in Cellular Immunology, Vol. 258, Issue 1 2009 p. 18-28, the authors found that:

"In conclusion, we report that a panel of widely used NSAIDs blunts antibody synthesis in human PBMCs and in purified B cells. Ibuprofen's ability to reduce antibody production was concentration- and time-dependent and likely occurred via Cox-2 inhibition. Our results call for awareness regarding the consequences that NSAIDs can have on immunity. NSAIDs are one of the most commonly used drugs; they are recommended for all age categories, are prescribed for relieving transient pain or in cases of serious inflammatory diseases. By decreasing antibody synthesis, NSAIDs also have the ability to weaken the immune system which can have serious consequences for children, the elderly and the immune-compromised patients."

While Mr. Delgado was incarcerated at the Wyatt Detention Center he was diagnosed with "an unspecified anxiety disorder."  Mr. Delgado's stress/ anxiety disorder was confirmed in his pre-sentence report in paragraph 76.

In the matter of Drego Abrego Arevalo v. Decker 1:20-CV-02982 (S.D.N.Y 2020), in an affidavit Robert M. Saplosky, Ph.D. Professor at Stanford University said:

"It is therefore my professional judgment that people who have suffered from chronic

stress are at heightened risk from COVID 19 and fall into the CDC high risk category of '[p]eople who are immunocompromised.'"  Exhibit "F" attached.

### Additional medical condition

Mr. Delgado is currently being treated at Danbury for obstructive sleep apnea.  If he were to contract COVID 19 it would appear that his compromised ability to breathe while sleeping would work against a fight against the virus.  See Exhibit "G" attached.

In sum based upon Mr. Delgado's medical conditions he is a high risk for becoming severely ill if he were to contract the COVID 19 virus.

### 3.) 18 U.S.C. section 3553(a) factors

Mr. Delgado received the mandatory minimum sentence required pursuant to 21 U.S.C. section 841(b)(1)(A)(ii) -- 120 months.  But for the mandatory minimum sentence, Mr. Delgado's sentencing guideline range would have been 100-120 months.  The 120 month sentence imposed took into account all the factors in 18 U.S.C. section 3553(a) at that time.

In light of the mandatory minimum, Mr. Delgado's sentencing memorandum was brief. He took complete responsibility for his offense.  He submitted for Your Honor's review what he had accomplished at the Wyatt Detention Center while detained.  He was positive about the future and had hopes of being admitted into the HVAC program and then the RDAP program while in the custody of the Bureau of Prisons.  He requested to be at Danbury FCI so he could be close to his family, particularly his now almost 3 year old son.

Mr. Delgado's prior incarcerations were not as hard for him to live through because he did not have a son at the time.  This term of incarceration has been much harder due to having a son that he cannot be with.

Mr. Delgado is currently a student in the HVAC program and also taking other courses.

He has been referred to the RDAP program "in order to better prepare for release." See Exhibit H" attached.

The pre-sentence report reflected that both Mr. Delgado's father and grandmother were in Puerto Rico. Mr. Delgado had been raised by his grandmother in Puerto Rico when he was young. His father told the Probation Officer that he wanted to become close to Mr. Delgado again so he [Mr. Delgado's father] could be a grandfather to Mr. Delgado's new born son. PSR paragraphs 56,61, 62 and 65.

The Probation Officer also spoke with Jocelyn Muniz, Mr. Delgado's partner and the mother of his young son. Ms. Muniz is still in Mr. Delgado's life and is still at the address listed in paragraph 68 of the PSR. This will be the address Mr. Delgado will return to when he is released.

Since his sentencing, both Mr. Delgado's father and his grandmother have moved from Puerto Rico to Connecticut to live with Ms. Muniz.

The pre-sentence report also reflected that Mr. Delgado was employed at the time he was arrested on December 1, 2017. According to Ms. Muniuz, Mr. Delgado still has a job available with his former employer when he is released

**4.) Sentencing Commission's policy statements**

Mr. Delgado will defer to Your Honor as to the Sentencing Commission's policy statements in the context of the current public health crisis.

**B. HOME CONFINEMENT**

If Your Honor denies the request for compassionate release under 18 U.S.C. section 3582(c)(1)(A)(i), Mr. Delgado would respectfully request that he be placed in home confinement for the balance of his sentence under 18 U.S.C. section 3624(c)(2).

"…the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") expanded the maximum amount of time that a prisoner may spend in home confinement: "if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement...." CARES Act § 12003(b),Pub. L. No. 116-136, 134 Stat. 281 (2020). Attorney General William Barr made the requisite "finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons" on April 3, 2020, thereby triggering the BOP's authority to expand the amount of time that a prisoner may spend in home confinement. Mem. for Director of BOP, Def.'s Ex. A at 1 (Apr. 3, 2020). In particular, the Attorney General acknowledged the "significant levels of infection" at FCI Danbury and instructed the Bureau to "move with dispatch ... to move vulnerable inmates out of [this] institution[ ]."  United States v. Sawicz, 08-CR-287(ARR)(E.D.N.Y. April 10, 2020) 2020 WL 1815851.

An undated U.S. Department of Justice Memo, says that in the determination of an inmate's eligibility for home confinement:

"It is strongly encouraged to refer inmates currently housed in a facility with active COVID 19 cases."  See Exhibit "I" attached at page 2.  Danbury has active COVID 19 cases.

### C.  FURLOUGH

If Your Honor denies the requests for compassionate release and home confinement, Mr. Delgado would respectfully request that, depending upon the Warden's response or lack of response to the undersigned's letter request attached as Exhibit "A":

1.)  The Court order or, alternatively, recommend to the Bureau of Prisons that Mr. Delgado be given an emergency furlough.  18 U.S.C. section 3622.

The existing case law appears clear that the BOP decides on furlough's pursuant to 18 U.S.C. section 3622, not the Federal District Courts.  However, the Second Circuit has not yet made that determination in a case where a furlough was sought from an institution that has active COVID 19 cases; where the inmate requested a furlough for COVID 19 safety reasons, and the Warden specifically denied the request for a furlough.  See the discussion and cases cited in United States v. Adrienne Roberts, 18-CR-528 (JMF) (S.D.N.Y. April 8, 2020) 2020 WL1700032.

Mr. Delgado should be granted a furlough until he can be safely returned to the custody of the Bureau of Prisons to finish his sentence based upon the BOP's "profound obligation to protect the health and safety of all inmates."  United States v. Adrienne Roberts, 18-CR-528 (JMF) (S.D.N.Y. April 8, 2020) 2020 WL1700032.

Respectfully submitted,

s/ William T. Koch, Jr.
William T. Koch, Jr., Fed. Bar #ct04781
44 Lyme Street Old Lyme, CT 06371
Phone: 860-434-3060/ fax: 860-434-9483
wmtkochjr@aol.com

CERTIFICATION OF SERVICE

I hereby certify that a copy this memorandum was sent to the following on April 23, 2020:

NOTICE OF SERVICE

I hereby certify that on April 23, 2020, a copy of the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent via-e-mail to all parties by operation of the Court's e-filing system or by mail

to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's ECF System.


/s/ William T. Koch, Jr.
William T. Koch Jr., Esq. Fed Bar ct#04781
44 Lyme Street Old Lyme, CT 06371
wmtkochjr@aol.com
phone: 860-434-3060/ fax: 860-434-9483