**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES,<br>    *Plaintiff*,<br><br>    v.<br><br>ERNESTO LUIS DELGADO,<br>    *Defendant.* | No. 3:18-cr-17-(VAB)-1 |

**RULING AND ORDER ON MOTION FOR COMPASSIONATE RELEASE**

Ernesto Luis Delgado ("Defendant") has moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Mot. for Compassionate Release, ECF No. 68 (Apr. 22, 2020) ("Def.'s Mot.").[1] On April 28, 2020, the Government filed an opposition to Mr. Delgado's motion. Mem. in Opp'n to Mot. for Compassionate Release, ECF No. 72 (Apr. 28, 2020) ("Gov't Opp'n").

For the reasons set forth below, the Court **GRANTS** Mr. Delgado's motion for compassionate release.

Mr. Delgado's term of imprisonment is reduced to **TIME SERVED**, and he shall be released from Bureau of Prisons ("BOP") custod**y** immediately**.** His 60-month term of supervised release shall begin, and he shall serve his entire term of supervised release on home incarceration. All other conditions of supervised release from his April 25, 2019 judgment shall remain in effect.

---

[1] In the alternative, Mr. Delgado requests release from BOP to home confinement under 18 U.S.C. § 3624(c)(2), or that he be granted a furlough under 18 U.S.C. § 3622 and 28 U.S.C. § 994(a)(2) until the current public health crisis has ended. Def.'s Mot. at 1. The Court, does not have authority, however, to grant such relief, as Congress has vested the BOP with the power to grant furloughs and to place prisoners in home confinement. *See United States v. Miles*, No. 11 CR. 581 (JFK), 2020 WL 1989290, at *1 (S.D.N.Y. Apr. 27, 2020) ("The Court, however, lacks the authority to" release the defendant to home confinement. (citing *United States v. Kanagbou*, 726 F. App'x 21, 25 n.1 (2d Cir. 2018) (summary order) ("[I]t is well established that the district court does not control how the Executive Branch carries out a defendant's sentence."));; 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment . . . .").

1

I.     BACKGROUND

On April 25, 2019, after Mr. Delgado pleaded guilty to one count of conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine under 21 U.S.C. § 841(a)(1), 841(b)(1)(A) and 846, the Court sentenced Mr. Delgado to 120 months (ten years) of imprisonment, five years of supervised release, and a special assessment of $100.00. Judgment, ECF No. 64 (Apr. 25, 2019).

On April 22, 2020, Mr. Delgado moved for compassionate release due to his health issues and in light of the COVID-19 pandemic. Def.'s Mot. Mr. Delgado submitted nine exhibits in support of his motion. Def.'s Mot. Exs. A–I, ECF Nos. 68-1–68-9.

On April 24, 2020, the Court held a telephonic conference on Mr. Delgado's motion. Minute Entry, ECF No. 70 (Apr. 24, 2020).

On April 28, 2020, the Government filed a memorandum in opposition to Mr. Delgado's motion. Gov't Opp'n.

On April 29, 2020, the Court held another telephonic conference on Mr. Delgado's motion. Minute Entry, ECF No. 74 (Apr. 30, 2020).

Later the same day, Mr. Delgado filed a motion to supplement his motion for release with Bureau of Prisons medical records from Mr. Delgado's time in custody at Danbury, and medical records from his time in custody at Wyatt Detention Center prior to his sentencing. Mot. to Suppl., ECF No. 73 (Apr. 29, 2020); Suppl. Exs., ECF Nos. 73-1–73-6.

Having been given credit for time served from the date of his arrest, Mr. Delgado began his term of incarceration on his arrest date, December 1, 2017. Def.'s Mot. at 1–2. He is incarcerated at the Danbury Correctional Institution ("Danbury") in Danbury, Connecticut. *Id.* Mr. Delgado has now been incarcerated for roughly twenty-nine months of his 120-month

sentence. Gov't Opp'n at 1. The Bureau of Prisons calculates his anticipated release date as June 9, 2026. *Id.* at 1–2.

## II.     STANDARD OF REVIEW

A court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) "upon motion of the Director of the Bureau of Prisons;" or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Gotti*, No. 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020) ("In December 2018, as part of the First Step Act, Congress worked a change to th[e] rule of long standing" that a court could only modify a sentence upon motion from the Bureau of Prisons. "A court may now consider a motion for compassionate release made by a defendant who has exhausted his administrative remedies by petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days[.]").

In determining whether to grant a motion to modify a sentence, a court must consider the factors set forth in 18 U.S.C. § 3553(a). A court may only grant such a modification if it finds that "extraordinary and compelling reasons warrant" a modification, or that

> the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community.

*Id.* A court must also find that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

**III.     DISCUSSION**

The applicable policy statement for compassionate release is found in the U.S. Sentencing Guidelines (U.S.S.G) § 1B1.13 and Commentary. U.S.S.G. § 1B1.13 states in part:

> [T]he court may reduce the term of imprisonment if . . . the court determines that [e]xtraordinary and compelling reasons warrant the reduction; . . . [t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and [t]he reduction is consistent with this policy statement.

*United States v. Lisi*, No. 15 CR. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) (quoting U.S.S.G. § 1B1.13(1)(A), (2), and (3)). While there exists a dispute among district courts as to whether a court must still defer to the BOP's determination of what qualifies as an "extraordinary and compelling reason" to modify a sentence, a majority of district courts, including in this District, have found that courts may make that determination independently. *See*, *e.g.*, *United States v. Rivernider*, No. 3:10-cr-222 (RNC), 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020) (collecting cases); *Lisi*, 2020 WL 881994, at *3 (collecting cases). Yet, U.S.S.G. "§ 1B1.13's descriptions of 'extraordinary and compelling reasons' remain current," *United States v. Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020), and "[t]he standards for considering the motion remain helpful as guidance to courts which hear these motions without the BOP as an intermediary," *United States v. Zullo*, No. 09 Cr. 0064-02 (GWC), 2019 WL 7562406, at *3 (D. Vt. Sept. 23, 2019).

Mr. Delgado requests that the Court grant his motion for compassionate release by reducing his sentence of incarceration to time served followed by commencement of his term of supervised release. Defs.' Mot. at 1. He argues that he has established "extraordinary and compelling reasons" warranting a sentencing reduction based on his medical conditions and the COVID-19 outbreak at Danbury. *Id.* at 3.

The Court agrees.

Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have held that a defendant's pre-existing health conditions—especially respiratory conditions—in combination with the increased risks of COVID-19 in prisons constitute "extraordinary and compelling reasons" warranting relief. *See, e.g.*, *United States v. Norris*, No. 3:17-cr-106 (SRU), 3:18-cr-243 (SRU) (D. Conn. Apr. 16, 2020) ("[Mr.] Norris suffers from asthma and uses an Albuterol inhaler to treat his symptoms. Health officials have recognized that individuals with chronic respiratory disease are deemed at greater risk of COVID-19. Due to his incarceration, [Mr.] Norris is unable to properly safeguard against infection." (internal citations omitted)); *United States v. Smith*, No. 12 CR. 133 (JFK), 2020 WL 1849748, at *1, *4 (S.D.N.Y. Apr. 13, 2020) ("[Mr.] Smith is 62 years old and suffers from multiple physical ailments. He has been treated for, among other things, asthma, high cholesterol, blood clots, a thyroid condition, and suspected multiple myeloma . . . . [Mr.] Smith's age and medical conditions—such as his asthma—place him at a higher risk for developing serious complications should he be exposed to COVID-19 while at the MDC or a halfway house, and would substantially diminish his ability to provide self-care within those environments." (citing U.S.S.G. § 1B1.13 comment n.1(A)(ii))); *United States v. McCarthy*, No. 3:17-cr-0230 (JCH), 2020 WL 1698732, *5 (D. Conn. Apr. 8, 2020) ("[Mr.] McCarthy is 65 years old and suffers from COPD, asthma, and other lung-related ailments . . . . The defendant's age and medical condition, taken in concert with the COVID-19 public health crisis, constitute an extraordinary and compelling reason to reduce [Mr.] McCarthy's sentence.").

Mr. Delgado's severe obesity and sleep apnea put him at increased risk should he contract COVID-19.

5

Mr. Delgado's medical records and exhibits show that, at six feet and one inch tall and an estimated weight of 305 pounds, he has body mass index (BMI) of 40.2 on the CDC's adult BMI Calculator. Def.'s Mot. Ex. C, ECF No. 68-3 (CDC Adult BMI Calculator—Results (last visited Apr. 15, 2020), *available at* https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html). Mr. Delgado's medical records from Danbury confirm that Mr. Delgado's weight has been recorded at between 296 and 310 pounds. Suppl. Ex., ECF No. 73-1 at 18 (Bureau of Prisons Health Services Clinical Encounter Administrative Notes (May 12, 2019)); Suppl. Ex., ECF No. 73-5 at 6 (Bureau of Prisons Health Services Clinical Encounter Administrative Notes (Apr. 26, 2020)).

Mr. Delgado points to a study conducted in April 2020 by doctors at NYU Langone Health Center in New York City. Def.'s Mot. at 3. The study found that "obesity of patients was the single biggest [chronic] factor, after age, in whether those with COVID-19 had to be admitted to a hospital." Defs.' Mot. Ex. B, ECF No. 68-2 (Tiernan Ray, *NYU Scientists—Largest US study of COVID-19 finds obesity the single biggest 'chronic' factor in New York City's hospitalizations*, ZDNet (Apr. 12, 2020), *available at* https://www.zdnet.com/article/nyu-scientists-largest-u-s-study-of-covid-19-finds-obesity-the-single-biggest-factor-in-new-york-critical-cases/). Obesity was defined in the NYU study as a BMI of 30 and higher. *Id.* Mr. Delgado thus falls squarely in a COVID-19 high risk category due to his BMI of over 40. Additionally, the CDC BMI calculator contains an alert stating: "COVID-19: Severe Obesity (a BMI of 40 or Higher) May Raise Risk of Severe Illness."). CDC Adult BMI Calculator.

Mr. Delgado has also been treated for psoriasis at Danbury, which he argues makes him immunocompromised because the disease is "thought be related to an immune

system problem with T cells and other white blood cells." Def.'s Mot. at 3–4; Def.'s Ex. D, ECF No. 68-4 (Mayo Clinic, Psoriasis, https://www.mayoclinic.org/diseases-conditions/psoriasis/symptoms-causes/syc-20355840 (last visited Apr. 17, 2020)).

Mr. Delgado has also suffered from sleep apnea since before his incarceration and continues to be treated for this condition at Danbury, where he is prescribed the use of a CPAP machine. Def.'s Mot. Ex. G, ECF No. 68-7 (St. Mary's Hospital Sleep Disorders Center, Polysomnography Report: Ernesto Delgado (Feb. 27, 2016) (evaluating Mr. Delgado for "sleep disordered breathing" and making "clinical findings of severe obstructive sleep apnea")); Suppl. Ex., ECF No. 73-4 (Complete Respiratory Care, Polysomnograph Report (Oct. 10, 2019)); Suppl. Ex., ECF No. 73-1 at 1, 2, 13 (Bureau of Prisons Health Services Clinical Encounter Administrative Notes (July 10, 2019, Oct. 25, 2019, Nov. 22, 2019)); Suppl. Ex., ECF No. 73-2 at 8 (Bureau of Prisons Health Services History & Physical (May 21, 2019)); Suppl. Ex., ECF No. 73-3 at 1, 9 (Bureau of Prisons Health Services Devices and Equipment (Nov. 22, 2019)).

While Mr. Delgado does not point to specific evidence showing that psoriasis puts him at a higher risk for COVID-19 complications, his obesity and sleep apnea certainly do. Courts have granted compassionate release to incarcerated individuals with obesity and sleep apnea because those conditions place them at high risk for serious complications due to COVID-19. *See, e.g.*, *See United States v. Scparta*, No. 18-cr-578 (AJN), 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020) (granting compassionate release to an incarcerated person who "suffer[ed] from hypertension, sleep apnea, high blood pressure, and high cholesterol"); *United States v. Gross,* No. 15-CR-769 (AJN), 2020 WL 1673244, at *1 (S.D.N.Y. Apr. 6, 2020) (granting compassionate release to an incarcerated person who was "severely overweight and suffers from high blood pressure and sleep apnea," finding that "the combination of [his] health conditions

7

and his incarceration compounds the risk COVID-19 poses to him, placing him in particularly grave danger" (internal citation and quotation marks omitted)); *United States v. Dawson*, No. 18-40085-HLT, 2020 WL 1812270, at *7 (D. Kan. Apr. 9, 2020) (granting compassionate release to an incarcerated person based on his obesity alone: "He has a medical condition (obesity) that the CDC recognizes puts him at an increased risk of developing serious illness if he were to become infected with COVID-19.").

Both Congress and the Attorney General have recognized the emergency presented to the Bureau of Prisons by COVID 19. Def.'s Mem. at 7. In passing the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Congress provided that "if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement. . . ." CARES Act § 12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020). Attorney General William Barr subsequently made a "finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons." *United States v. Sawicz*, No. 08-cr-287 (ARR), 2020 WL 1815851, at *1 (E.D.N.Y. Apr. 10, 2020) (citing a memorandum for the Director of BOP). "In particular, the Attorney General acknowledged the 'significant levels of infection' at FCI Danbury and instructed the Bureau to 'move with dispatch . . . to move vulnerable inmates out of [this] institution[ ].'" *Id.*

Mr. Delgado cites to an undated U.S. Department of Justice Memo stating: "It is strongly encouraged to refer inmates currently housed in a facility with active COVID 19 cases." Def.'s Mot. Ex. I, ECF No. 68-9 (David Brewer, U.S. Dep't of Justice Fed. Bureau of Prisons, Memorandum for Correctional Program Administrators: Furlough and Home Confinement Additional Guidance). As of April 30, 2020, Danbury had recorded 18 inmates and 27 staff who

were positive for COVID-19, and one inmate death. *See* Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (Apr. 30, 2020)); Fed. R. Evid. 902(5) ("The following items of evidence are self-authenticating; . . . (5) Official Publications. A book, pamphlet, or other publication purporting to be issued by a public authority."); *United States v. Capozzi*, No. 3:16-cr-347, 2020 WL 1849777, at *2 (M.D. Pa. Apr. 13, 2020) ("We further take judicial notice of recent policies and procedures adopted by LCP to prevent or limit the spread of COVID-19 within the prison.").

Normally, under 18 U.S.C. § 3582(c)(1)(A), a court may not modify or reduce a defendant's sentence on that defendant's motion when the defendant has not exhausted his administrative remedies by either (1) appealing a failure of the BOP to bring such a motion on the defendant's behalf or (2) the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility. Mr. Delgado's counsel represents that he sent an e-mail request for compassionate release to the Warden on April 10 and a letter on April 12, 2020. Def.'s Mot. at 2. On April 20, 2020, Mr. Delgado's counsel sent a letter request to the Warden on Mr. Delgado's behalf and received a return receipt indicating the Warden had received it. Def.'s Ex. A, ECF No. 68-1 (Letter from Counsel to Danbury Warden (Apr. 20, 2020)). The Government notes that there is no evidence in the record of e-mails sent on April 10 or 12. Gov't Opp'n at 10. In any event, it appears that the exhaustion requirement has not been met here.

Numerous district courts in the Second Circuit, however, have waived the exhaustion requirement during the COVID-19 pandemic. *See, e.g.*, *Norris*, No. 17-cr-106 (SRU), 3:18-cr-243 (SRU); *McCarthy*, 2020 WL 1698732, at *3–4; *United States v. Zuckerman*, 16 Cr. 194 (AT), 2020 WL 1659880, at *2–4 (S.D.N.Y. Apr. 3, 2020); *United States v. Colvin*, No. 3:19-cr-

179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020); *United States v. Perez*, No. 17 Cr. 513-3 (AT), 2020 WL 1546422, at * 2–3 (S.D.N.Y. Apr. 1, 2020).

"Even where exhaustion is seemingly mandated by statute . . . , the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). "[T]he requirement of completing the administrative process may be waived 'if one of the recognized exceptions to exhaustion applies.'" *McCarthy*, 2020 WL 1698732, at *3 (quoting *Perez*, 2020 WL 1546422, at *2). These exceptions include: (1) where exhaustion would be futile, including where undue delay due to exhaustion may result in "catastrophic health consequences;" (2) where "the administrative process would be incapable of granting adequate relief;" and (3) where "pursuing agency review would subject plaintiffs to undue prejudice." *Washington*, 925 F.3d at 118–20.

District courts have found that all three exceptions apply in cases where incarcerated individuals, due to their age and underlying health issues, seek compassionate release in light of the spread of COVID-19. *See, e.g.*, *McCarthy*, 2020 WL 1698732, at *4 ("Even a few weeks' delay carries the risk of catastrophic health consequences for [Mr.] McCarthy. Second, given the brief duration of Defendant's remaining term of imprisonment, the exhaustion requirement likely renders BOP incapable of granting adequate relief, as his sentence will likely already have expired by the time his appeals are exhausted and would certainly already have expired by the time the thirty-day waiting period ends. Finally, and obviously, [Mr.] McCarthy could be unduly prejudiced by such delay. Clearly, given his conditions, [Mr.] McCarthy is at great risk of succumbing to COVID-19."); *Perez*, 2020 WL 1546422, at *3 ("Here, even a few weeks' delay carries the risk of catastrophic health consequences for Perez. The Court concludes that requiring him to exhaust administrative remedies, given his unique circumstances and the exigency of a

rapidly advancing pandemic, would result in undue prejudice and render exhaustion of the full BOP administrative process both futile and inadequate.").

Here, an unyielding view of the exhaustion requirement is likely to render the BOP incapable of granting adequate relief, and, in light of Mr. Delgado's vulnerability to COVID-19 and the current presence of COVID-19 in his facility, he would be unduly prejudiced by delay.

As explained above and set forth in his motion, Mr. Delgado has demonstrated that his obesity and sleep apnea place him at greater risk from COVID-19, and that he is unable to properly guard against infection while incarcerated. The Court takes note of and appreciates BOP's efforts to manage the coronavirus pandemic in its facilities. *See* Gov't Opp'n at 16–19 (discussing the BOP Coronavirus (COVID-19) Phase Five Action Plan initiated on April 1, 2020)). Nonetheless, COVID-19 cases continue to spread in BOP facilities, including in Danbury, and Mr. Delgado's obesity and underlying health conditions make him extremely vulnerable to serious health complications should COVID-19 reach him.

As one judge noted about a similar motion from a woman incarcerated at Danbury: "The Court's preferred course of action would have been to grant her temporary release, removing her from FCI Danbury during the pandemic while requiring her to eventually serve the remainder of her sentence once the danger from COVID-19 had subsided." *United States v. Park*, No. 16-cr-473 (RA), 2020 WL 1970603, at *5 (S.D.N.Y. Apr. 24, 2020). Clearly, that would be the preferable solution for Mr. Delgado, given his original sentence and his criminal history. "But the mechanism for granting temporary release—18 U.S.C. § 3622(a)—lies solely in the BOP's hands, leaving the Court without any authority to grant the relief it believes most proper in this instance." *Id.* ("The Court fears that leaving Ms. Park any longer at FCI Danbury may convert a three-year prison sentence into a death sentence. And that the Court cannot allow.").

In the absence of such relief from BOP, reduction of Mr. Delgado's sentence to time served is consistent with U.S.S.G. § 1B1.13 because extraordinary and compelling reasons warrant the reduction. The terms of the sentence modification, while not ideal, should ensure that Mr. Delgado will not pose a danger to the safety of any other person or to the community. Mr. Delgado will be on supervised release at home during the time he would have been incarcerated.

Accordingly, having considered all of these factors as well as those set forth in 18 U.S.C. § 3553(a), the Court concludes that they weigh in favor of immediate release.

### IV. CONCLUSION

For the reasons explained above, the Court **GRANTS** the motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Mr. Delgado's term of imprisonment is reduced to **TIME SERVED**. It is **ORDERED** that Mr. Delgado be released immediately to begin his five-year term of supervised release.

Mr. Delgado shall serve the entire term of his supervised release on home incarceration. All other conditions of supervised release from his April 25, 2019 judgment shall remain in effect.

Upon returning to his home, Mr. Delgado shall self-quarantine for fourteen (14) days. He must also contact his physician to determine whether he is a candidate for testing for COVID-19. If his medical provider determines that he needs to be tested, he must comply with that testing. If the test is positive, he shall promptly report the result to the Bureau of Prisons.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of April, 2020.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge